IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

GALAXY COMPUTER SERVICES,    )
INC.,                        )
                             )
     Plaintiff,              )
                             )
          v.                 )          1:04cv1036(JCC)
                             )
LARA BAKER, ET AL.,          )
                             )
     Defendants.             )

## M E M O R A N D U M   O P I N I O N

This matter comes before the Court on: (1) Defendant
Sullivan's Motion *In Limine* Regarding Evidence of
Indemnification; (2) Defendants' Joint Motion for *De Novo* Review
and Jury Trial on Portions of Bankruptcy Court Summary Judgment
Order; (3) Plaintiff's Motion *In Limine* Pursuant to Federal Rule
of Civil Procedure 403 to Exclude Evidence of the Defendants'
Alleged "National Security Motive" in Breaching their Fiduciary
Duties; (4) Defendants' Motion *In Limine* to Exclude Evidence of
the Deposition Testimony of Meredith Mouer of Andrews Kurth; (5)
Defendants' Motion *In Limine* to Exclude Testimony of Charles
Lundelius; (6) Defendants' Motion *In Limine* to Exclude Testimony
of Charles Taylor; and (7) Plaintiff's Motion *In Limine* Pursuant
to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579
(1990) and Federal Rules of Evidence 702, 703 and 403, to Exclude
the Testimony and Opinions of Alan S. Zipp.

For the following reasons, the Court will deny Defendant Sullivan's Motion *In Limine* Regarding Evidence of Indemnification, deny Defendants' Joint Motion for *De Novo* Review and Jury Trial on Portions of Bankruptcy Court Summary Judgment Order, deny Plaintiff's Motion *In Limine* Pursuant to Federal Rule of Evidence 403 to Exclude Evidence of the Defendants' Alleged "National Security Motive" in Breaching their Fiduciary Duties, partially grant and partially deny Defendants' Motion *In Limine* to Exclude Evidence of the Deposition Testimony of Meredith Mouer of Andrews Kurth, deny Defendants' Motion *In Limine* to Exclude Testimony of Charles Lundelius, deny Defendants' Motion *In Limine* to Exclude Testimony of Charles Taylor, and partially grant and partially deny Plaintiff's Motion *In Limine* Pursuant to *Daubert* and Federal Rules of Evidence 702, 703 and 403, to Exclude the Testimony and Opinions of Alan S. Zipp.

## I. Background

This is an action by a Chapter 11 debtor in possession against two of its former officers, a company that purchased a portion of the debtor's assets, and the parent of the company that purchased the assets.[1]  All the Defendants made a timely demand for a jury trial.  Since no bankruptcy judge in the Eastern District of Virginia has been authorized to conduct a

---

[1] The bank that foreclosed on and sold the assets was also a Defendant but has settled with the debtor in possession and has been dismissed as a party to this action.

jury trial, the referral of this case to the bankruptcy court was withdrawn under 28 U.S.C. § 157(d).

The debtor in possession, Plaintiff Galaxy Computer Services, Inc. ("Galaxy,") is in the business of providing computer security services to various government agencies and commercial customers.  Defendants Gary Sullivan and Dr. Lara Baker founded Galaxy.  They sold their ownership interest in Galaxy to a company named DOLFIN.COM ("Dolfin") in June 2000 in exchange for Dolfin stock and a promissory note.  Sullivan and Baker remained officers and directors of the company after the sale.

Some of Galaxy's government contracts were highly sensitive.  The U.S. Government would not permit Galaxy to be merged into Dolfin, which is part-owned by non-U.S. citizens. The Government required that a barrier be established between Dolfin and Galaxy to prevent unauthorized access to classified information and influence over Galaxy's business or management by Dolfin.  This barrier took the form of two Proxy Holder Directors with high level security clearances who joined Galaxy's Board.

Sullivan and Baker entered into employment contracts with Dolfin.  The agreements contained restrictions on :Sullivan and Baker's post-termination employment with companies engaged in the provision of security services similar to those offered by Galaxy; their promotion to existing Galaxy customers of services

3

similar to or competitive with Galaxy's services; and their inducing customers or employees of Galaxy to alter or terminate their relationship with Galaxy.  All three restrictions applied if the employee voluntarily resigned unless the employee had been constructively terminated, in which event only the last of the three restrictions applied.  The restrictions were limited in time to twelve months following the termination of employment, but had no geographical limitation.

After acquiring Galaxy, Dolfin sought out potential investors and merger partners.  Defendant MCJM, LLC, d/b/a Pinnacle Financial Strategies ("Pinnacle") expressed an interest and was permitted to review Galaxy's financial records after signing a non-disclosure and non-solicitation agreement dated January 15, 2003.  Dolfin ultimately rejected an offer by Pinnacle.

Galaxy had three loans with Los Alamos National Bank totaling approximately $668,000, the largest of which was due to mature on March 15, 2003.  Baker and Sullivan were personally liable on the loans as guarantors.  Galaxy had been experiencing severe cash-flow problems for some time, and often had difficulty meeting payroll.

Baker and Sullivan were unhappy that Dolfin had repeatedly failed to deliver on its promised cash infusions to Galaxy or to pay the purchase-money notes for their stock.  In

early March 2003, they began discussing ways for Pinnacle to acquire Galaxy.

Soon thereafter, without telling the Proxy Holder Directors or Dolfin, Baker and Sullivan advised the Bank that Galaxy would be unable to pay the largest of the three notes when it matured.  Baker and Sullivan waived any cure periods and consented to the bank's immediate foreclosure on Galaxy's assets.

Shortly before the foreclosure, Pinnacle caused a limited liability company known as Galaxy CSI, LLC ("CSI") to be formed.  CSI is a Defendant in this suit.  On March 25, 2003, Sullivan told the Bank's general counsel that Galaxy's contract receivables were "very perishable" and that an expedited sale to Pinnacle would realize the Bank the greatest return on the collateral.  On March 31, 2003, the Bank accepted Pinnacle's bid of $430,000, executed a Bill of Sale to Pinnacle of Galaxy's accounts receivable and contracts receivable.  None of this was disclosed by Baker and Sullivan either to the Proxy Holder Directors or to Dolfin.

On March 31, 2003, Sullivan called an "all hands" meeting of Galaxy's employees.  A representative of Pinnacle offered Galaxy's employees new employment contracts with CSI.  All of the employees resigned that day from Galaxy and accepted employment with CSI, which carried on Galaxy's business at the

same location and used Galaxy's phone numbers and Internet web site.

On April 3, 2003, Sullivan advised the Proxy Holders that he and Baker had resigned two days earlier and that Galaxy's assets had been purchased by CSI. A week later, Dr. John Fox, formerly the president of Dolfin, became Galaxy's president. Galaxy filed a voluntary Chapter 11 petition on May 7, 2003.

The present litigation was commenced by Galaxy on May 15, 2003. The First Amended Complaint is pleaded in 18 counts. Several of these counts are no longer at issue. The bankruptcy court granted partial summary judgment with respect to two counts as they pertain to the individual Defendants. The counts still at issue are as follows, annotated as to whether they remain pending against Defendants CSI ("C"), Pinnacle ("P"), Baker ("B"), and Sullivan ("S").

| Count | Description | C | P | B | S |
|-------|-------------|---|---|---|---|
| II | Avoidance of Fraudulent Transfer (11 U.S.C. § 548) | X | | | |
| III | Accounting | X | X | X | X |
| IV | Injunctive Relief | X | X | X | X |
| V | Breach of Fiduciary Duty | | | X | X |
| VI | Aiding and Abetting Breach of Fiduciary Duty | X | X | | |
| VII | Fraudulent Conveyance (Va. Code § 55-80) | X | | | |
| VIII | Breach of Contract | X | X | X | X |

6

| IX | Civil Conspiracy | X | X | X | X |
|------|------|------|------|------|------|
| XII | Tortious Interference with Contractual Rights | X | X | X | X |
| XIII | Tortious Interference with at-will contracts | X | X | X | X |
| XIV | Business Conspiracy (Va. Code §§ 18.2-499 & 500) | X | X | X | X |

The parties' motions *in limine* are now before the Court.

## II. Analysis

### A.  Sullivan's Motion to Exclude Evidence of Indemnification

Pursuant to Rule 403[2] of the Federal Rules of Evidence, Defendant Sullivan seeks to exclude testimony and evidence relating to the indemnification section of his employment agreement with Defendant CSI.  The employment agreement contains as a "Key Term and Condition," a provision stating:

> [CSI] agrees to indemnify, hold harmless, and defend [Sullivan] against any and all claims, suits, and demands of any kind ("Claims") that may be brought against [CSI] and/or [Sullivan] for the actions or inactions arising both before and after this Agreement is executed, including but not limited to, any Claims, if any, brought by any entity or person as a result of the purchase of the assets of Galaxy Computer Services, Inc. by Galaxy CSI, LLC., and/or Galaxy Holdings, LLC, and/or the employment of [Sullivan] and any and all matters related thereto.  As part of this indemnity agreement, the Company also agrees to pay in full any

---

[2] Sullivan also references Fed. R. Evid. 411, but contends that a Rule 411 argument would be redundant because Rule 403 compels the same result.  The Court does not consider the indemnification agreement to be liability insurance for purposes of Rule 411 and will analyze Defendant's motion based on Rule 403.

final judgments entered against [Sullivan] and/or any
settlements agreed to by [Sullivan] that are the direct
result of the sale/purchase transaction, along with all
reasonable attorney's fees incurred by [Sullivan's]
counsel of choice in the defense and/or resolution of
said Claims.  The parties agree that this
indemnification agreement is a material incentive to
[Sullivan] to enter into this Agreement, and is
intended by the parties to be construed broadly so as
to protect [Sullivan].

(Sullivan Mot. Regarding Evid. of Identification, Ex. 1).

Sullivan argues that although the terms and conditions
of his current employment are relevant to this dispute, the
probative value of those terms does not outweigh[3] the extremely
prejudicial nature of the evidence.  (Sullivan Mot. at 2).
Federal Rule of Evidence 403 provides:

Although relevant, evidence may be excluded if its
probative value is substantially outweighed by the
danger of unfair prejudice, confusion of the issues, or
misleading the jury, or by considerations of undue
delay, waste of time, or needless presentation of
cumulative evidence.

Fed. R. Evid. 403.

Sullivan argues that much like the exclusion of
insurance arrangements under Fed. R. Evid. 411, evidence of this
indemnification agreement could cause the jury to greatly
increase the damages awarded against him because he is not really
going to have to pay the damages, his employer will.

---

[3] In some portions of his brief Sullivan seems to flip Rule 403 on its
head.  The probative value of evidence need not outweigh the danger of unfair
prejudice in order for the evidence to be presented to a jury.  Rather, in
order to be excluded under Rule 403, the probative value of evidence must be
substantially outweighed by the danger of unfair prejudice.

8

The indemnification agreement is probative as evidence that Sullivan sought to shield himself from legal action taken against him by Galaxy.  Thus, the indemnification agreement is probative evidence that Sullivan may have intended to engage in what he believed to be wrongful conduct or felt that he had already engaged in wrongful conduct with respect to Galaxy.  *See DSC Communications v. Next Level Communications*, 929 F. Supp. 239, 244 (E.D. Tex. 1996), *aff'd in part and vacated in part on other grounds*, 107 F.3d 322 (5th Cir. 1997)("An individual's subjective belief that an act already taken is wrongful is probative, but not dispositive, as to whether the individual's conduct was wrongful.")

Plaintiff cites *DSC Communications* to support its argument that the probative value of indemnification agreement evidence is not substantially outweighed by the danger of unfair prejudice attached to such evidence.  However, the Court does not consider *DSC Communications* to be instructive on this point.  In that case, the evidence was admitted, in part, because the defendant "opened the door to admission of the agreement in voir dire, when counsel told the jurors that the case was 'a question of life or death to [the defendants].'" 107 F.3d at 328.

Nevertheless, the Court finds that the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice.  Unlike a defendant in a typical case involving

9

a liability insurance policy, where the insurer is not a party to the lawsuit, the party indemnifying Sullivan, CSI, is itself a Defendant in this case.  The relationship and understanding between the Defendants with regard to liability for the acts that comprise this lawsuit are especially probative.  Baker and Sullivan are not alleged to be Defendants who *happen to be* insured against the acts at issue in the case.  Rather, Baker and Sullivan are alleged to have conspired with the entity that has agreed to indemnify them.  Given the probative value of the evidence of indemnification, a limiting instruction admonishing the jury that it should not consider the indemnification agreement when considering the issue of damages will sufficiently protect against unfair prejudice.  Accordingly, Defendant Sullivan's motion will be denied.

    B.  Defendants' Joint Motion for *De Novo* Review and Jury Trial on Portions of the Bankruptcy Court's Summary Judgment Order

       Defendants argue that pursuant to Bankruptcy Rule 9033 and 28 U.S.C. § 157(c)(1), this Court should exercise *de novo* review of the findings of the Bankruptcy court that were non-core.  Specifically, Defendants ask this Court to reverse two of the Bankruptcy court's rulings: (1) the determination that Galaxy's contracts were conveyed as part of the Bill of Sale between the Bank and CSI; and (2) the determination that Baker and Sullivan's employment agreements are enforceable.

Bankruptcy Rule 9033 provides, in pertinent part:

> In non-core proceedings heard pursuant to 28 U.S.C. §
> 157(c)(1), the bankruptcy judge shall file proposed
> findings of fact and conclusions of law.
>
> Within 10 days after being served with a copy of the
> proposed findings of fact and conclusions of law a
> party may serve and file with the clerk written
> objections which identify the specific proposed
> findings or conclusions objected to and state the
> grounds for such objection.
>
> . . .
>
> The district judge shall make a de novo review upon the
> record or, after additional evidence, of any portion of
> the bankruptcy judge's findings of fact or conclusions
> of law to which specific written objection has been
> made in accordance with this rule.  The district judge
> may accept, reject, or modify the proposed findings of
> fact or conclusions of law, receive further evidence,
> or recommit the matter to the bankruptcy judge with
> instructions.

Bankr. R. 9033(a),(b),(d).

Plaintiff Galaxy argues that this was not heard
pursuant to 28 U.S.C. § 157(c)(1), but pursuant to 28 U.S.C. §
157(c)(2).  Bankruptcy Rule 9033 does not apply to 28 U.S.C. §
157(c)(2).  Accordingly, before the Court can consider any
substantive issues regarding the Bill of Sale and Baker and
Sullivans' employment contracts, the Court must first satisfy
itself that the Bankruptcy court operated pursuant to 28 U.S.C. §
157(c)(1).

The relevant statutory provisions read:

> (1)  A bankruptcy judge may hear a proceeding that is
> not a core proceeding but that is otherwise related to
> a case under title 11. In such proceeding, the

11

bankruptcy judge shall submit proposed findings of fact
and conclusions of law to the district court, and any
final order or judgment shall be entered by the
district judge after considering the bankruptcy judge's
proposed findings and conclusions and after reviewing
de novo those matters to which any party has timely and
specifically objected.

28 U.S.C. § 157(c)(1).

(2)  Notwithstanding the provisions of paragraph (1) of
this subsection, the district court, with the consent
of all the parties to the proceeding, may refer a
proceeding related to a case under title 11 to a
bankruptcy judge to hear and determine and to enter
appropriate orders and judgments, subject to review
under section 158 of this title.

28 U.S.C. § 157(c)(2).

Federal bankruptcy courts possess jurisdiction to enter

orders and judgments in core proceedings.  28 U.S.C. § 157(b)(1).

They may not enter orders and judgments in non-core related

proceedings unless they receive reference from the parent

district court and the consent of each party.  28 U.S.C. §

157(c)(2).  Without reference from the parent district court and

the consent of the parties, a bankruptcy court may only issue

proposed findings and recommendations to the district court.  28

U.S.C. § 157(c)(1).

This case was transferred to the Bankruptcy court

pursuant to a July 13, 1984 standing referral from this Court.

Pursuant to 28 U.S.C. § 157, the Order refers to the Bankruptcy

Judge, *inter alia,*

[a]ll cases under Title 11 of the United States Code
and any and all proceedings arising under Title 11 of

12

the United States Code or arising in or related to a
case under Title 11 of the United States Code filed in
this Division on or after July 10, 1984 except
proceedings involving personal injury tort or wrongful
death claims. . . .

(Order of Reference, No. 20 (E.D. Va. July 13, 1984 Order).

This standing Order permits the Bankruptcy court, with
the consent of the parties, to hear and enter appropriate orders
and judgments in cases arising in or related to a case under
Title 11, pursuant to 28 U.S.C. § 157(c)(2).  *See In Re McClean
Square Assocs., G.P., v. J.W. Fortune Inc.*, 200 B.R. 128, 133-34
(E.D. Va. 1996).

In the Fourth Circuit, a party who fails to object to a
bankruptcy court's jurisdiction over a non-core related matter
until after the entry of an unfavorable order has impliedly
consented to the court's power.  *See id.*  At no time before the
Bankruptcy court entered its summary judgment order did the
Defendants raise the core/non-core issue.  Accordingly, the Court
finds that the Defendants impliedly consented to the bankruptcy's
court's power.  *See In Re McClean Square Assocs.*, 200 B.R. at
134.

Bankruptcy Judge Mitchell entered an order partially
denying and partially granting summary judgment on July 30, 2004.
Cases referred pursuant to § 157(c)(2) are subject to review
under 28 U.S.C. § 158.  The Defendants, however, did not timely

13

seek leave have this non-dispositive summary judgment order reviewed.  Accordingly, Defendants' motion will be denied.

   C.  Plaintiff's Motion *in Limine* Pursuant to Fed. R. Evid.
   403 to Exclude Evidence of the Defendants' alleged "National
   Security" Motive in Breaching their Fiduciary Duties

A critical issue in this action is whether Defendants Sullivan and Baker breached their fiduciary duties to Galaxy and its shareholder, Doflin, from mid-2002 to March 31, 2003.  During this period, Galaxy provided hardware and software services to the U.S. military-intelligence community, which was preparing for the Iraq war.  Defendants Sullivan and Baker will assert that their actions furthered U.S. national security interests because they sought to avoid any disruption in the work Galaxy performed for the U.S. military.

Plaintiff requests that the Court prohibit the admission of any evidence or testimony related to this "national security" justification by Defendants Baker and Sullivan. Plaintiff argues that this evidence has little or no probative value, is unfairly prejudicial, will trigger a trial within a trial, and will confuse the issues.

The issues presented are: (1) whether the motives of Baker and Sullivan are probative as to Plaintiff's claims for the alleged intentional torts of common law conspiracy (Count IX), interference with contractual relations (Counts XII-XIII), and conspiracy to injure business (Count XIV); and (2) whether any

14

probative value of the motives is substantially outweighed by the
danger of unfair prejudice.

According to Plaintiff, the passions of the jurors
would be unfairly inflamed such that they would not consider any
instructions regarding breach of fiduciary duty, but instead,
would react in accordance with their subjective beliefs on the
Iraq war.  Plaintiff further argues that permitting this defense
would generate a "trial within a trial" because it would require
a determination of whether the company's existence was actually
threatened, whether the U.S. government had "back-up"
contractors, and ultimately, whether the U.S. national security
interests would be impacted even if the company went out of
business.  Such a result, they say, would mislead the jury, cause
undue delay, and waste the Court's time.

Defendant Sullivan argues that his belief that he was
acting to protect the national security interests of the U.S.
"goes to the facts and circumstances surrounding [his and
Baker's] actions as fiduciaries, an inquiry that is required to
determine whether actions breached a fiduciary duty owed to the
Plaintiff."  (Defs.' Opp'n at 1-2).  Defendants argue that this
motive is probative as to their intent for the alleged
intentional torts of common law conspiracy (Count IX),
interference with contractual relations (Counts XII-XIII), and
conspiracy to injure business (Count XIV).

15

Plaintiff counters that the Defendants are confusing "motive" as the reason for the actions and "legal intent," as an element in several of the claims.  Essentially, Plaintiff argues that Defendants' motivations for their actions are irrelevant to the various "intent" inquiries.  Plaintiff is correct as to the tortious interference claims, but not as to the common law and statutory conspiracy claims.

While intent is an element of a tortious interference claim, all that is needed to prove intent is that a defendant "knows that the interference is certain or substantially certain to occur as a result of his [or her] actions." *Commerce Funding Corp. v. Worldwide Sec. Servs. Corp.*, 249 F.3d 204, 212-13 (4th Cir. 2001).  Thus, in establishing intent for purposes of the tortious interference claim, the Defendants' motive is irrelevant.

A common law civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish some criminal or unlawful purpose, or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means. *Hechler Chevrolet, Inc. v. General Motors Corp.*, 337 S.E.2d 744, 748 (Va. 1985)(citing *Werth v. Fire Adjust. Bureau*, 171 S.E. 255, 259, *cert. denied*, 290 U.S. 659, (1933)).  As set forth in American Jurisprudence:

> Since one cannot agree, expressly or tacitly, to commit
> a wrong about which he or she has no knowledge, in

16

order for civil conspiracy to arise, the parties must
be aware of harm or wrongful conduct at beginning of
combination or agreement.  Thus, civil conspiracy is an
intentional tort requiring a specific intent to
accomplish the contemplated wrong . . . .

AMJUR CONSPIRACY § 51 (2d ed. 2004).

Since civil conspiracy requires a specific intent to
accomplish the contemplated wrong, evidence of the Defendants'
motive is relevant.

The relevant section of the Virginia Code covering
statutory conspiracy provides:

A. Any two or more persons who combine, associate,
agree, mutually undertake or concert together for the
purpose of (i) willfully and maliciously injuring
another in his reputation, trade, business or
profession by any means whatever or (ii) willfully and
maliciously compelling another to do or perform any act
against his will, or preventing or hindering another
from doing or performing any lawful act, shall be
jointly and severally guilty of a Class 1 misdemeanor .
. . .

Va. Code Ann. § 18.2-499.

With regard to statutory conspiracy, the plaintiff is
not required to prove actual malice.  *Advanced Marine Enters.,
Inc. v. PRC Inc.*, 501 S.E.2d 148, 154 (Va. 1998).  Sections 18.2-
499 and -500 do not require a plaintiff to prove that a
conspirator's primary and overriding purpose is to injure another
in his trade or business.  *Id.* (citing *Commercial Bus. Sys., Inc.
v. BellSouth Servs., Inc.*, 453 S.E.2d 261, 267 (1995)); *see also
Va. Vermiculite, Ltd. v. W.R. Grace & Co.-Conn.*, 144 F. Supp. 2d
558, 601-02 (W.D. Va. 2001)(defendants' purpose of injuring

17

plaintiff in its business is sufficient to establish the requisite intent under the Virginia Conspiracy Act which does "not require a plaintiff to prove that a conspirator's primary and overriding purpose is to injure another in his trade or business")(citations omitted).  Rather, these statutes merely require proof of legal malice, that is, proof that the defendant acted intentionally, purposefully, and without lawful justification.  *Advanced Marine*, 501 S.E.2d at 154-55.

Since statutory conspiracy requires that the defendant acted with the purpose of injuring the plaintiff in its business, evidence of the Defendants' motive is relevant.  Although the plaintiff is not required to prove that a purpose of injuring the plaintiff in its business was a primary or overriding purpose, the plaintiff must prove that it was a purpose.  Thus, Baker and Sullivan are entitled to admit evidence that this was not their purpose.

Since their motive is relevant and probative as to the civil and statutory conspiracy claims, the Court must determine whether the probative value of their alleged "national security motive" is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury under Rule 403.

Rule 403 authorizes the exclusion of evidence on the grounds of prejudice only when there is a genuine risk that the

emotions of the jury will be excited to irrational behavior and only then when that risk is disproportionate to the probative value of the evidence. *Westfield Ins. Co. v. Harris*, 134 F.3d 608, 615 (4th Cir. 1998)(internal citation and quotation marks omitted). Although national security has clearly been on the minds of the American public in recent times, the Court does not believe that there is a genuine risk that the jurors will be unable to fairly consider Baker and Sullivan's proffered evidence that they acted out of concern for national security along with other evidence admitted at trial.

Should Baker and Sullivan admit this evidence, the Plaintiff will have the opportunity to cross-examine them. Moreover, the Defendants have agreed that a jury instruction instructing the jury not to base its verdict on sympathy, bias, guesswork, or speculation, but only upon the evidence and instructions of the Court, should be given. With such an instruction and subjecting the evidence to cross-examination, any prejudicial effect will be minimized. *See generally United States v. Masters*, 622 F.2d 83, 87 (4th Cir. 1980)("Such prejudice, if any, can be generally obviated by a cautionary or limiting instruction, particularly if the danger of prejudice is slight in view of the overwhelming evidence of guilt."); *Coach, Inc. v. We Care Trading Co., Inc.*, 67 Fed.Appx. 626, *629-30, 2002 WL 32103175, at *3 (2d Cir. May 20, 2002)(potential

19

prejudicial effect of certain evidence was obviated by cross-examination).

As to the civil and statutory conspiracy counts, the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.  The Court will deny Plaintiff's motion *in limine* to exclude evidence of the Defendants' alleged national security motive.

D.  Defendants' Motion *in Limine* to Exclude Evidence of the Deposition Testimony of Meredith Mouer of Andrews Kurth

Defendants seek to: (1) exclude two sets of handwritten notes of Meredith Mouer, an attorney with Andrews Kurth, ("the notes,") arguing that they are prejudicial and protected by the attorney-client privilege; and (2) prohibit Plaintiff Galaxy from referring to the rulings of Bankruptcy Judge Mitchell and District Judge Brinkema concerning the crime-fraud exception to the attorney-client privilege, arguing that such reference would be prejudicial.  Galaxy seeks to: (1) admit the notes in their entirety; and (2) confine the in-court testimony of Mouer to the scope of her deposition arguing that any testimony outside the scope would be prejudicial.  Should the Court admit the notes, Defendants seek to have Mouer testify what two references in her notes to "tortious interference" mean.  Should the Court permit Mouer to explain the references at trial, Galaxy seeks to refer to the rulings of Bankruptcy Judge Mitchell and District Judge

Brinkema concerning the crime-fraud exception to the attorney-client privilege.  The Defendants object to any such references.

Mouer took the notes during two discussions with other Andrews Kurth counsel about a proposed structure involving Dolfin, Galaxy, and Pinnacle.  (Def.'s Supp. Reply, Ex. 2 at 14-16).  Bill Bracken of Pinnacle was involved in the discussion on March 4, 2003.  (*Id.*, Ex. 3 at 6).  At oral argument, CSI explained that the proposed structure "did not come to fruition" and Galaxy did not contest this statement.

The notes contain two references to "tortious interference."  One reference is under the heading "Possible Claims," as "1. Tortious Interference."  (*Id.*, Ex. 1 at 2).  The second reference is on the next page which shows a "Proposed Structure" at the top of the page, a "Proposal" in the middle of the page, and at the bottom has a list that says: "1. How do this?  What steps? 2. Concerns?  Problems?  Tortious Interference?"  (*Id.* at 5).

Mouer's notes were produced pursuant to a production order by Judge Mitchell.  In ruling on a motion to compel production of documents from Andrews Kurth filed by Galaxy, Judge Mitchell held that: (1) certain documents were not protected by the attorney-client privilege and had to be produced; (2) certain documents that might fall within the attorney-client privilege had to be produced under the crime-fraud exception to the

privilege "because they are part and parcel of the on-going planning among defendants Pinnacle, Sullivan, and Baker to engineer a takeover of Galaxy;" and (3) depositions of Andrews Kurth attorneys were allowed for the limited purpose of establishing the authenticity of the documents he ordered produced and to establish dates and contents of any meetings with or communications by Baker and Sullivan prior to April 1, 2003. (*See* Def.'s Br. Regarding Andrews Kurth, Ex. 2).  CSI stipulates that the notes are authentic.

The Defendants appealed Judge Mitchell's ruling and Judge Brinkema affirmed.  Judge Brinkema ruled that the allegations in the Complaint of "an extensively planned course of dealing to collude with a competitor and clandestinely transfer assets from the parent company, through transactions structured with the advice of counsel" were sufficient allegations of fraud in a bankruptcy case to invoke the crime-fraud exception.  *Galaxy CSI, LLC v. Galaxy Computer Services, Inc.*, No. 04-07-A at *5 (E.D. Va. March 31, 2004)(Brinkema, J.).  Judge Brinkema also ruled that Galaxy established a prima facie case of fraud as required for the exception to apply because:

> as the bankruptcy court found, Baker, Sullivan, and
> Pinnacle took steps to hide the foreclosure from the
> two independent proxy board members, depriving Dolfin
> of any opportunity to pay the notes and cure the
> default.  Based on the evidence in this record of self-
> dealing and deliberate concealment of information,
> documents that show willful misrepresentation of the
> consent of the independent proxy board members are

22

> plainly relevant to the claim of fraudulent transfer of
> Galaxy's assets.  Therefore, the bankruptcy court's
> finding that Baker and Sullivan were not acting in
> accordance with their fiduciary responsibilities as
> defined in [*Odyssey Partners, L.P. v. Fleming Cos.*, 735
> A.2d 386, 417-21 (Del. Ch. 1999)] is not error.

*Id.* at *8.

Judge Brinkema did not stay her order pending appeal.
However, to give Defendants an opportunity to seek a stay from
the United States Court of Appeals for the Fourth Circuit, Judge
Brinkema did not require production of the documents until ten
days after the issuance of her order.  *Id*.  The Defendants did
not appeal Judge Brinkema's ruling or seek a stay.

Defendants argue that Mouer's notes should be excluded
because they are: (1) misleading and prejudicial; and (2)
protected by the attorney-client privilege.  However, the
Defendants' argument that the notes are protected by privilege is
foreclosed by the rulings of Judge Mitchell and Judge Brinkema.
Judge Brinkema specifically gave the Defendants ten days from the
date of her order to produce the documents to allow them to
appeal.  They did not do so.  Defendants' argument that they were
unable to appeal her ruling lacks merit.  Thus, the Defendants
are foreclosed from arguing that the notes be excluded based on
the attorney-client privilege and the Court need only determine
whether the notes are admissible under Federal Rule of Evidence
403.

Defendants argue that the notes are misleading and irrelevant because they were created during a discussion about a proposed joint venture which never came to fruition. Defendants also argue that the notes, but specifically the references to "tortious interference," will unduly prejudice and mislead the jury. Defendants claim that the notes are cryptic and cannot be put into context, so the jury cannot determine what Mouer meant by "tortious interference." Galaxy argues that the "tortious interference" reference should go to the jury because it is probative evidence.

The Court finds that the references to "tortious interference" have little or no probative value. It is difficult to determine what Mouer meant by the references, but it is unlikely that she meant that the Defendants were planning to tortiously interfere with Galaxy's business. Even if an attorney thought the document was protected by privilege, he or she would not likely memorialize a client's plan to break the law. As Defendants argue, Mouer more likely meant that tortious interference was a concern to keep in mind when deciding whether the Defendants should take certain actions. In fact, the first reference is under the heading "Possible Claims" and the second is after the words "Concerns? Problems?"

Given that tortious interference is one of the claims alleged in this case, there is a genuine risk that the jury will

be misled by the references in the notes.  This risk does substantially outweigh any probative value of the references. The Court will exclude the references to "tortious interference" in the notes.

However, the Court will admit the remainder of the notes.  They are probative because they show that the Defendants were considering a joint venture proposal involving Pinnacle, Galaxy, Baker, and Sullivan.  The notes appear to indicate that the joint venture would have enabled Baker and Sullivan to foreclose Galaxy's accounts receivable.  (Def.'s Supp. Reply, Ex. 2 at 17-19).  Even though the proposal was not implemented, it is probative because it was considered.  It shows what the Defendants were thinking.  The Defendants' argument that the notes are not relevant because the proposal was not implemented lacks merit.  The Defendants provide no other reason to exclude the remainder of the notes.  Accordingly, the Court will admit the remainder of the notes.

Defendants seek to have Mouer testify at trial to explain her notes even though counsel for CSI instructed her not to answer most of the substantive questions she was asked about the notes during her depositions, invoking the attorney-client privilege.  Galaxy argues that it would be prejudicial to allow her to testify at trial to topics which CSI shielded her from testifying to during the deposition.

Mouer was questioned extensively about the notes during her depositions on April 27, 2004 and May 27, 2005.  However, CSI's counsel made sixty-three objections during this line of questioning, instructing her not to answer.  CSI's counsel limited her testimony to what is in the notes, and would not allow her testify as to her understanding of the notes.  (*See, e.g.*, Def.'s Supp. Reply, Ex. 2 at 18, Ex. 3 at 8).  CSI so limited the depositions of other Andrews Kurth attorneys.  (Pl.'s Mem. Supp. Obj. Mouer Test. at 4).  During the deposition of Matthew Hoeg, also with Andrews Kurth, Galaxy's counsel adjourned for a telephone conference with Judge Mitchell to seek to expand discovery.  (*Id.*)  Judge Mitchell declined to allow full discovery on the documents.  (*Id.*)

In *In re Edmond*, 934 F.2d 1304, 1308 (4th Cir. 1991), the Fourth Circuit held that the Fifth Amendment privilege could not be invoked as a shield to oppose depositions and then discarded for the limited purpose of making statements to support a summary judgment motion.  In that case, the debtor had selectively asserted his Fifth Amendment privilege to submit an affidavit supporting his summary judgment motion, after having invoked it to oppose depositions.  The court held it was proper for the trial court to refuse to consider the debtor's affidavit when addressing the summary judgment motion.

26

In *United States v. Workman*, 138 F.3d 1261, 1263-64 (8th Cir. 1998), the Eighth Circuit explained that the defendant could not selectively assert the attorney-client privilege to block the introduction of information harmful to his case after introducing other aspects of his conversations with his attorney for his own benefit.  The court stated: "[t]he attorney client privilege cannot be used as both a shield and a sword, and [the defendant] cannot claim in his defense that he relied on [his attorney's] advice without permitting the prosecution to explore the substance of that advice."  *Id.* at 1264.

In *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 576-77 (1st Cir. 1989), the First Circuit held that a defendant who had invoked the Fifth Amendment and refused to answer questions about a shooting during a deposition could not later testify at trial about the shooting.  The court "would not tolerate nor indulge a practice whereby a defendant by asserting the privilege against self-incrimination during pre-trial examination and then voluntarily waiving the privilege at the main trial surprised or prejudiced the opposing party."  *Id.* at 576.

Finally, in *Engineered Prods. Co. v. Donaldson Co., Inc.*, 313 F. Supp. 2d 951, 1022-23 (N.D. Iowa 2004), the court barred the plaintiff from introducing testimony at trial on issues that the plaintiff had prevented the defendant from exploring during a deposition by invoking the attorney-client

privilege.  Relying on *Workman*, the court explained that to allow the plaintiff to present the testimony at trial would be to allow the plaintiff to use the privilege "as both a shield and a sword."  *Id.* at 1022 (citing *Workman*, 138 F.3d at 1263).  The court held that plaintiff's objections during the deposition:

> likely precluded as full an exploration of documents and issues . . . as the defendant would have been entitled to make, had there been a contemporaneous judicial finding of waiver of attorney-client privilege.  Therefore, the parties will be entitled to present documents and testimony formerly protected by attorney-client privilege only to the extent that those issues were explored in [the] deposition.

*Id.* at 1023.

The weight of authority indicates that to permit Mouer to testify to issues which she refused to testify to during her deposition based on privilege would allow the Defendants to use the attorney-client privilege as both a shield and a sword.  Thus, Mouer may only testify at trial within the scope of her deposition and Plaintiff may not refer to the rulings of Judge Mitchell and Judge Brinkema concerning the crime-fraud exception to the attorney-client privilege.

Accordingly, the Defendants' motion *in limine* with respect to the Andrews Kurth lawyers is partially granted and partially denied.

### E.  Defendants' Motion *In Limine* to Exclude Testimony of Charles Lundelius

28

Galaxy seeks to introduce the expert opinion testimony of Charles Lundelius to establish the fair market value of Galaxy as of March 15, 2003 and the damages to Galaxy "due to the actions of Galaxy management and others."  In forming the bases for his opinions, Lundelius relies, in part, on two contested sources:

> 1.  Strawman Budget: prepared in early 2003 by Michael Dubrieul, Chief Executive Officer of Dolfin, the majority shareholder of Galaxy, to attract prospective buyers; and
>
> 2.  Due Diligence Report: prepared in January 2003 by two part-time consultants for Pinnacle or one of its wholly-owned subsidiaries, to determine Galaxy's solvency.

Defendants seek to have the Court exclude Lundelius' testimony and report.  They argue that Lundelius' expert testimony is not reliable because the foundations for his opinion, the Strawman Budget and the Due Diligence Report, are unreliable.

Defendants contend that the Strawman Budget is unreliable because Dubrieul grossly inflated Galaxy's revenues and underestimated Galaxy's costs to attract potential buyers. In particular, the Strawman Budget estimated that Galaxy's revenues would nearly double in less than a one year period despite its historical averages.  Defendants argue that Dubrieul fabricated the Strawman Budget.

Defendants contend that the Due Diligence Report is unreliable because the consultants who prepared the report, Frank Tortorelli and Chris DeSouza, only had two and a half days to review Galaxy's business documents.  Additionally, there is scant evidence that these two consultants were qualified to produce such a report.  Assuming their findings are legitimate, Lundelius also ignored findings in the Due Diligence Report that significantly devalued Galaxy's financial viability.

Defendants argue that based on Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1990) and its progeny, the expert testimony and report of Lundelius should be excluded.

Rule 702 provides that expert testimony must be based on reliable principles:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

If there is an objection to the testimony, the proponent of the testimony has the burden of establishing that the expert's testimony is reliable by a preponderance of the evidence.  *Daubert*, 509 U.S. at 592.

30

Galaxy contends that: (1) the Strawman Budget and Due Diligence Report accurately reflected the financial posture of Galaxy; (2) Lundelius reviewed and used other source documents (listed in his Report) to form the bases for his opinions; and (3) Lundelius made certain adjustments in his report "to allow for possible infirmities in the data he was using." (Pl.'s Opp. Mem. at 5).

Galaxy contends that Dolfin's Strawman Budget was properly based on historical data and that its projected increases in revenue and reduction in costs are reliable.  In particular, Galaxy claims that prospectively reducing Galaxy's Selling and Administrative costs by 21% in the Strawman Budget is not unreliable where Galaxy's directors, Defendants Sullivan and Baker, had just given themselves raises and employed some of their family members.

The Court finds that Lundelius' Report is sufficiently reliable.  With respect to the Due Diligence Report, the two part-time consultants who prepared the Due Diligence Report analyzed Galaxy's financial data for six months, irrespective of the fact that they were only present at Galaxy's business location for two and a half days.  The consultants, Tortorelli and DeSouza, were qualified to perform the analysis as evidenced by their subsequent positions in CSI: Tortorelli became Chief Executive Officer of Defendant CSI, and DeSouza became Chief

Financial Officer of Defendant CSI.  The Report is all the more reliable because it was based on a five-year analysis of Galaxy's financial statements.

Moreover, in addition to the contested Due Diligence Report and Strawman Budget, Lundelius relied on other data to form the bases of his opinions as outlined in his Report.  These documents include profit and loss statements, balance sheets, audited and unaudited financial statements, pipeline reports, and tax returns.

At most, Defendants have raised factual disputes. "When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony." *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed. Cir. 2003).  The Advisory Committee note to Rule 702 instructs:

> When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on "sufficient facts or data" is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.

"Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595.  Accordingly, Defendants' motion will be denied.

      F.  Plaintiff's Motion *In Limine* to Exclude Testimony of Alan S. Zipp

      Defendants Pinnacle and CSI retained Alan S. Zipp to render an opinion and report on two issues: (1) at what point in time did Galaxy become insolvent; and (2) could Galaxy have survived with sufficient additional capital.  Zipp prepared two reports.  The first of these is dated October 31, 2003.  The second is dated December 15, 2003.  The second report was prepared to rebut the report prepared by Plaintiff's expert, Lundelius.

      Plaintiffs argue that Zipp's Reports, opinions, and related testimony should be excluded pursuant to Rule 702 and *Daubert,* because he: (1) did not apply any generally accepted or recognized methodology in reaching his conclusions; (2) relied on incomplete data; (3) failed to make adjustments and analyses which he admits should have been performed; and (4) was unaware of facts which would or could have affected his analyses and conclusions.

      The Court finds that Zipp's October 31, 2003 Report does not meet *Daubert's* reliability threshold*.*  Zipp prepared his first report over an eight day period.  He did not have adequate time to analyze Galaxy's voluminous financial documents.  Indeed, Zipp stated that he "only glanced through it.  There was a lot of information, an awful lot of very valuable information that [he] just simply did not have time."  (Zipp Dep. November 18, 2003, at

32-33).  Zipp's notes of his initial conversation with counsel for Defendants CSI and Pinnacle reflect his understanding that he would be "[w]ell paid for a quick job."  (*Id.* at 65).

In addition to the time constraints associated with Zipp's preparation of the October 31, 2003 report, Zipp failed to incorporate significant assets in reaching a determination as to Galaxy's value.  He "did not analyze Galaxy as a going concern profit making business" and did not consider the value of Galaxy's goodwill, including Galaxy's "information diode operating system."  (*Id.* at 54, 104, 108).  Zipp utilized unaudited financial statements in preparing the report and had no knowledge as to their reliability or correctness.  (*Id.* at 107).

Zipp's own words best illustrate that his initial report is not sufficiently reliable.

> [T]here were many, many, many adjustments that I did
> not make because of the time in this case. . . . There
> were many adjustments that just didn't get made that
> should have been made, or would have been made, and
> will be made in an analysis of profitability . . .
> [a]nd had I – if I have the opportunity to analyze the
> books more comprehensively, I will make the adjustments
> that are appropriate.

(*Id.* at 110).

For these reasons, Zipp's October 31, 2003 report is not sufficiently reliable.  The Court will exclude this report and Zipp's related testimony.  On the other hand, Zipp's rebuttal report, dated December 15, 2003, is not burdened by these deficiencies.  The Court will not exclude the December 15, 2003

report and will permit Zipp to testify as to his related findings in rebuttal to the Lundelius report.

Accordingly, Plaintiff's motion will be granted in part and denied in part.

### G. Defendants' Motion *In Limine* to Exclude Testimony of Paul Taylor

Plaintiff Galaxy seeks to introduce the expert opinion testimony of Paul Taylor to establish that Defendants deleted certain Galaxy computer files.  Taylor, who has worked in the field of computer forensics for five years, analyzed nine Galaxy hard drives and prepared an expert report that details, *inter alia*, deletion of the "Alamos" (the foreclosing bank) directory, deletion of all files with "Baker" in it from Plaintiff's mail server, and several other deletions.  Plaintiff offers Taylor's testimony for the purpose of authenticating the recovered documents and to permit jury instructions on spoilation of evidence and consciousness of wrongdoing.

Defendants seek to have the Court exclude Taylor's testimony.  They argue that: (1) Taylor's expert opinion is irrelevant to the issues set for trial; (2) Taylor is not qualified to give expert testimony; (3) Taylor did not follow proper procedures; and (4) Taylor cannot opine about altered or deleted data.

Defendants argue that Taylor will testify about matters beyond the scope of Plaintiff's eighteen counts.  Defendants note

that the Complaint does not raise any allegations suggesting that Defendants altered or deleted data, documents, etc. Consequently, Defendants contend that Taylor's proposed expert testimony is irrelevant and not helpful to the jury.

The Court disagrees.  The interactions between Galaxy's officers and directors and Defendant Pinnacle and its agents, Frank Tortorelli and Chris DeSouza, are highly relevant to Galaxy's claims in the Complaint.  For instance, the alleged intentional file deletions relate to the counts on conspiracy, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty.  Plaintiff seeks to use this testimony for jury instructions on consciousness of guilt and spoilation of evidence.

Defendants argue that Taylor is not qualified to testify as a computer expert because: (1) none of his degrees are in computer science; (2) he is not fluent in any computer language; (3) he is not a computer programmer; (4) he holds no certificates in computer science; and (5) he possesses no training or special education for Microsoft certification. Although Taylor did attend to computer studies at the Cranfield University in the United Kingdom, these courses were conducted as seminars in an off-campus hotel and lasted for no more than four weeks.

The Court finds that Taylor qualifies as an expert based on his knowledge, skill, experience, training and education.  The field of computer forensics does not require a background in computer programming or reading and writing code.  Taylor has been working in the field of computer forensics for five years.  During this period, he has completed between 1,600 and 1,700 forensic reports based on his findings, some of which have been accepted by various courts.  Taylor is a member of the High Tech Crime Investigation Association and has completed three post-graduate intensive training courses in computer forensics at Cranfield University.

Defendants also argue that Taylor and his employer, Data Recovery Services ("DRS,") failed to follow their own internal chain of custody procedures when examining Galaxy's hard drives and thus cannot ensure that their recovery and analysis of the data from the Galaxy computers was accurate and untainted.  Some of the hard drives from the Galaxy computers were sent to Galaxy and/or Galaxy's counsel and then to DRS approximately one week later.  Defendants contend that this chain of custody problem creates a risk that some of the hard drives may have been tainted and are consequently unreliable.

Plaintiffs concede that Taylor cannot specify who deleted the data from the hard drives or when the data was

deleted.  Taylor was only able to determine that the files at issue were deleted or altered some time after June 19, 2003.

The "chain of custody" rule is a variation of the requirement under Federal Rule of Evidence 901(a) that evidence must be properly authenticated or identified prior to being admitted.  *United States v. Turpin*, 65 F.3d 1207, 1213 (4th Cir. 1995)(citations omitted).  The "chain of custody" rule requires that admitted exhibits "be preceded by 'evidence sufficient to support a finding that the matter in question is what its proponent claims.'"  *United States v. Ricco*, 52 F.3d 58, 61 (4th Cir. 1995)(quoting Fed. R. Evid. 901), *cert. denied*, 516 U.S. 898 (1995).

However, the possibility of a break in the chain of custody goes only to the weight of the evidence.  *United States v. Harrington*, 923 F.2d 1371, 1374 (9th Cir. 1991)(citations omitted).  The Court will allow Taylor to testify.  Defendants may, of course, cross-examine Taylor regarding the chain of custody and Taylor's inability to ascertain the exact dates of deletion and/or alteration of files or the identities of those responsible.  Defendants' motion will be denied.

### III.  Conclusion

For the foregoing reasons, the Court will deny Defendant Sullivan's Motion *In Limine* Regarding Evidence of Indemnification, deny Defendants' Joint Motion for *De Novo* Review

and Jury Trial on Portions of Bankruptcy Court Summary Judgment
Order, deny Plaintiff's Motion *In Limine* Pursuant to Federal Rule
of Evidence 403 to Exclude Evidence of the Defendants' Alleged
"National Security Motive" in Breaching their Fiduciary Duties,
partially grant and partially deny Defendants' Motion *In Limine*
to Exclude Evidence of the Deposition Testimony of Meredith Mouer
of Andrews Kurth, deny Defendants' Motion *In Limine* to Exclude
Testimony of Charles Lundelius, deny Defendants' Motion *In Limine*
to Exclude Testimony of Charles Taylor, and partially grant and
partially deny Plaintiff's Motion *In Limine* Pursuant to *Daubert*
and Federal Rules of Evidence 702, 703 and 403, to Exclude the
Testimony and Opinions of Alan S. Zipp.  An appropriate Order
shall issue.


May 27, 2005                    _____/s/ James C. Cacheris_____
Alexandria, Virginia            UNITED STATES DISTRICT COURT JUDGE