```
            IN THE UNITED STATES DISTRICT COURT FOR THE
                    EASTERN DISTRICT OF VIRGINIA

                          Alexandria Division


GALAXY COMPUTER SERVICES,    )
INC.,                        )
                             )
     Plaintiff,              )
                             )
          v.                 )         1:04cv1036(JCC)
                             )
LARA BAKER, ET AL.,          )
                             )
     Defendants.             )
```

**M E M O R A N D U M   O P I N I O N**

Defendants Pinnacle and CSI seek an award of costs and attorneys' fees of $115,731.50 that they claim were unnecessarily incurred in litigating this action because of Plaintiff's conduct. They seek to hold Plaintiff and Plaintiff's counsel jointly liable.[1]

## I. Background

This is an action by a Chapter 11 debtor in possession against two of its former officers, a company that purchased a portion of the debtor's assets, and the parent of the company

---

[1] The original motion sought an award of fees and costs against Plaintiff Galaxy. After receiving Galaxy's Opposition, Defendants filed an Amended Motion seeking attorneys fees jointly against Galaxy and Galaxy's counsel. Some time later, Galaxy filed an Opposition to the Amended Motion. Defendants subsequently filed a Motion to Strike Plaintiff's Opposition to the Amended Motion on the grounds that it was untimely. As the Court will deny both the Motion and Amended Motion for Attorneys' Fees, the Motion to Strike is moot.

that purchased the assets.[2] All the Defendants made a timely demand for a jury trial. Since no bankruptcy judge in the Eastern District of Virginia has been authorized to conduct a jury trial, the referral of this case to the bankruptcy court was withdrawn under 28 U.S.C. § 157(d).

The debtor in possession, Plaintiff Galaxy Computer Services, Inc. ("Galaxy,") is in the business of providing computer security services to various government agencies and commercial customers. Defendants Gary Sullivan and Dr. Lara Baker founded Galaxy. They sold their ownership interest in Galaxy to a company named DOLFIN.COM ("Dolfin") in June 2000 in exchange for Dolfin stock and a promissory note. Sullivan and Baker remained officers and directors of the company after the sale.

After acquiring Galaxy, Dolfin sought out potential investors and merger partners. Defendant MCJM, LLC, d/b/a Pinnacle Financial Strategies ("Pinnacle") expressed an interest and was permitted to review Galaxy's financial records after signing a non-disclosure and non-solicitation agreement dated January 15, 2003. Dolfin ultimately rejected an offer by Pinnacle.

---

[2] The bank that foreclosed on and sold the assets was also a Defendant but has settled with the debtor in possession and has been dismissed as a party to this action.

Galaxy had three loans with Los Alamos National Bank totaling approximately $668,000, the largest of which was due to mature on March 15, 2003. Baker and Sullivan were personally liable on the loans as guarantors. Galaxy had been experiencing severe cash-flow problems for some time, and often had difficulty meeting payroll.

Baker and Sullivan were unhappy that Dolfin had repeatedly failed to deliver on its promised cash infusions to Galaxy or to pay the purchase-money notes for their stock. In early March 2003, they began discussing ways for Pinnacle to acquire Galaxy.

Soon thereafter, without telling the Proxy Holder Directors or Dolfin, Baker and Sullivan advised the Bank that Galaxy would be unable to pay the largest of the three notes when it matured. Baker and Sullivan waived any cure periods and consented to the bank's immediate foreclosure on Galaxy's assets.

Shortly before the foreclosure, Pinnacle caused a limited liability company known as Galaxy CSI, LLC ("CSI") to be formed. CSI is a Defendant in this suit. On March 25, 2003, Sullivan told the Bank's general counsel that Galaxy's contract receivables were "very perishable" and that an expedited sale to Pinnacle would realize the Bank the greatest return on the collateral. On March 31, 2003, the Bank accepted Pinnacle's bid

of $430,000 and executed a Bill of Sale to Pinnacle of Galaxy's accounts receivable and contracts receivable.

On March 31, 2003, Sullivan called an "all hands" meeting of Galaxy's employees. A representative of Pinnacle offered Galaxy's employees new employment contracts with CSI. All of the employees resigned that day from Galaxy and accepted employment with CSI, which carried on Galaxy's business at the same location and used Galaxy's phone numbers and Internet web site.

On April 3, 2003, Sullivan advised the Proxy Holders that he and Baker had resigned two days earlier and that Galaxy's assets had been purchased by CSI. A week later, Dr. John Fox, formerly the president of Dolfin, became Galaxy's president. Galaxy filed a voluntary Chapter 11 petition on May 7, 2003.

The present litigation was commenced by Galaxy on May 15, 2003. A jury trial was conducted from May 18, 2005 through May 27, 2005. The jury found in favor of the Defendants[3] on: (1) breach of fiduciary duty; (2) aiding and abetting breach of fiduciary duty; (3) fraudulent conveyance; (4) breach of contract as to CSI; (5) civil conspiracy; (6) tortious interference with contractual rights; (7) interference with at-will contracts; and (8) statutory business conspiracy. The jury found in favor of

---

[3] Galaxy did not allege each count against each Defendant, but the jury found in favor of all Defendants on all but the breach of contract count.

the Plaintiff on breach of contract as to Defendants Pinnacle, Sullivan, and Baker, but awarded zero damages.

Pinnacle and CSI now seek fees associated with: (1) preparing for the use of Andrews Kurth, ("AK,") attorneys at trial and the efforts of Arent Fox attorneys to get up to speed in order to prepare for trial after Plaintiff caused AK to have a conflict and withdraw as counsel; (2) preparing for Plaintiff's expert Paul Taylor whom Plaintiff never called at trial; and (3) preparing for deposition designations that were not used at trial.

## II. Standard of Review

There is an exception to the general rule against the award of attorneys' fees to the prevailing party where the losing party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Robinson v. Ritchie*, 646 F.2d 147, 148 (4th Cir. 1981)(quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975)). The Supreme Court has referred to the *Alyeska* exception for award of attorneys' fees as the "bad faith exception." *Id.* (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980)). The Fourth Circuit agreed that this is an accurate characterization of the exception. *Id.*

As explained by Wright and Miller:

> Bad faith may be demonstrated in various ways. Courts assess fees when the litigation itself is perceived as having been brought in bad faith to harass or vex a party or frivolously . . . . Of course, the

>fact that litigation was brought or defended
>unsuccessfully does not automatically result in a
>finding of bad faith; something more has to be shown.
>     Gross negligence or obdurate conduct during the
>course of an action also can support a finding of bad
>faith and justify an award of attorney's fees.  Even in
>these cases, however, the courts are careful not to
>discourage parties from litigating thoroughly and bad
>faith will not be found if the party's actions were
>deemed nonfrivolous or only ordinarily negligent.

10 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 3d § 2675 (2005).

### III. Analysis

#### A. AK attorneys

Defendants allege that "Plaintiff's continued insistence to utilize the depositions of AK attorneys and the placement of those attorneys on its witness list required AK to withdraw as counsel for Defendants . . . . Accordingly, Arent Fox and its co-counsel Craig Young, Esq. [of Connelly Bove Lodge & Hurtz] incurred fees to bring Arent Fox lawyers up to speed before they could even prepare for trial."  (Def.'s Mot. Fees at 3).  Defendants seek $61,059 for Arent Fox fees and $31,013 for Connelly Bove Lodge & Hurtz fees regarding the AK attorneys.

Lawrence Block, counsel for Galaxy, explains that Galaxy fully intended to use the Meredith Mouer, an AK attorney, depositions and exhibits, but decided not to do so after receiving a ruling from the Court and in light of severe time pressure during the trial.  (*See* Pl.'s Opp'n Fees, Ex. 1 ¶¶ 13-15).  On May 17, 2005, the day before the trial began, the Court ruled that any reference to "tortious interference" in Mouer's

notes had to be redacted and confined her testimony to the scope of her deposition which had been limited by the Bankruptcy Court. *See Galaxy Computer Servs., Inc. v. Baker*, No. 04-1036 at *24-28 (E.D. Va. May 25, 2005). The Court also prohibited Galaxy from referring to the rulings of Bankruptcy Judge Mitchell and District Judge Brinkema concerning the crime-fraud exception to the attorney-client privilege.[4] (*Id.*)

Defendants argue in response that if the AK lawyers played as critical a role in the Defendants' alleged conspiracy as Galaxy claimed and Galaxy really needed to call them as witnesses, then the Court's ruling should not have prompted Galaxy not to call the AK lawyers. Defendants argue that AK lawyers decided to withdraw under a conflict of interest only after Galaxy represented that the AK lawyers would be called as witnesses.

However, it is clear that Galaxy did not act in bad faith, vexatiously, wantonly, or for oppressive reasons. It was

---

[4] AK lawyers' testimony and exhibits were the subject of a motion to compel heard by Judge Mitchell and appealed to Judge Brinkema. Bankruptcy Judge Mitchell held that, *inter alia*, certain documents held by AK that might fall within the attorney-client privilege had to be produced under the crime-fraud exception to the privilege "because they are part and parcel of the on-going planning among defendants Pinnacle, Sullivan, and Baker to engineer a takeover of Galaxy." (*See* Defs.' Br. Regarding AK, Ex. 2). Judge Brinkema affirmed and ruled that the allegations in the Complaint of "an extensively planned course of dealing to collude with a competitor and clandestinely transfer assets from the parent company, through transactions structured with the advice of counsel" were sufficient allegations of fraud in a bankruptcy case to invoke the crime-fraud exception. *Galaxy CSI, LLC v. Galaxy Computer Servs., Inc.*, No. 04-07-A at *5 (E.D. Va. March 31, 2004). Judge Brinkema also ruled that Galaxy established a prima facie case of fraud as is required for the exception to apply. *Id.* at *8.

entirely proper for Galaxy to oppose Defendants' motion in limine to exclude the evidence of the deposition testimony of Mouer and seek to admit the evidence. In light of the Court's ruling on the admissibility of Mouer's testimony and notes, and the progress of the trial, Galaxy's counsel made the professional judgment not to admit the AK lawyers' evidence. There is nothing in the record to suggest that Galaxy or its counsel claimed that it would use the AK evidence in order to cause AK to withdraw and force Defendants to find other representation for trial. The Court is surprised that CSI and Pinnacle suggest that Galaxy and its counsel engaged in such underhanded tactics and does not believe that the allegations are true. The Court will deny Defendants' motion for attorneys' fees regarding the AK lawyers.

**B. Paul Taylor**

Defendants allege that since Fall 2003, Galaxy expressed its intention of calling Paul Taylor to testify, so Defendants prepared to cross-examine Taylor. On May 22, 2005, in the middle of trial, Galaxy notified the Defendants that it would not call Taylor. Defendants seek $4,245 for Connelly Bove Lodge & Hurtz fees and costs regarding Taylor.

Block explains that Taylor was to testify about the deletion of materials from Galaxy's computers, but ultimately decided that Taylor's deposition and Defendants' rebuttal expert's report clouded the issue. (*See* Pl.'s Opp'n Fees, Ex. 1

¶¶ 16-20). Based on this, and the progression of the trial, Galaxy's counsel decided that the issue had the potential of distracting the jury from more important issues, and decided not to call Taylor. (*Id.*)

Defendants argue in response that because Taylor's deposition was taken on October 8, 2003 and Defendants' rebuttal expert report was submitted on December 5, 2003, "Plaintiff's counsel was aware that there was a question about whether they should call Mr. Taylor to testify approximately 2-1/2 years before the trial began." (*See* Defs.' Reply at 8). Defendants claim that "[p]rior to May 22, 2005, Plaintiff and its counsel knew or should have known that it was not going to call Mr. Taylor as a witness at trial . . . . Plaintiff also knew, or should have known, that it could not possibly call twelve live witnesses and read eight depositions, totaling hundreds of pages, in the four days allotted for Plaintiff's case." (*Id.* at 9)

Again, there is no evidence that Galaxy in bad faith, vexatiously, wantonly, or for oppressive reasons insisted that it would call Taylor to testify, and after Defendants had prepared to cross-examine him, decided not to call Taylor. It appeared that Plaintiff's counsel were unfamiliar with the practice of law before this Court and simply bit off more than they could chew with respect to the amount of evidence they initially planned to present at trial. Once the trial was underway, they realized

9

that the patience of neither the Court nor the jury would permit them to submit all the evidence as planned. After three days of trial, Galaxy's counsel made the professional judgment not to call Taylor. The Court notes that it is not uncommon for a party not to call every witness on its witness list. There was nothing vexatious about Galaxy's intention prior to trial to call Taylor, or its decision during trial not to call Taylor. The Court will deny Defendants' motion for attorneys' fees and costs regarding Taylor.

### C. Deposition designations

Finally, Defendants allege that Galaxy engaged in "gamesmanship" in designating more than 700 pages of depositions to be read to the jury and caused Defendants to re-read and re-designate the depositions immediately before trial, when Galaxy's counsel knew or should have known that the depositions would never be used at trial. (Defs.' Reply at 9-10). Defendants seek $18,874.50 for Connelly Bove Lodge & Hurtz fees with respect to the deposition designations.

Defendants state, and Galaxy does not dispute, that in December 2004, Galaxy provided voluminous deposition designations for a number of witnesses. On May 5, 2005, counsel for both sides met in an effort to streamline several issues for trial. Defendants allege that Galaxy represented that it would provide narrower designations for trial, but did not do so until required

by the Court.  At a hearing on May 12, 2005, Defendants requested that Galaxy provide the actual designations that would be utilized at trial and the Court ordered that such designations be provided by May 13, 2005.  Galaxy provided the depositions on May 13, 2005, and Defendants provided revised counter-designations and objections on May 16, 2005.  On May 17, 2005, Galaxy filed a Motion to Strike the counter-designations and objections.  Because of the late hour at which counsel for both sides provided their designations, counter-designations, and objections, and the manner in which the documents were provided to the Court, on May 17, 2005, the Court ruled that all of Defendants' objections to the depositions were sustained.  At that time, Galaxy represented that it would use the depositions of Tortorelli, DeSouza, Bracken, Baker, Gillen, and Mouer.  However, Galaxy ultimately only used the deposition of Tortorelli at trial.

Block explains that Galaxy decided during trial not to use the remaining depositions in good faith based upon the evidence that had already come in, the need to shorten Galaxy's case, the Court's determination that objections would be upheld without specific rulings, and the reaction of the jury to the reading of the Tortorelli deposition.  (See Pl.'s Opp'n Fees, Ex. 1 ¶¶ 22-24).

Again, there is no evidence that Galaxy in bad faith, vexatiously, wantonly, or for oppressive reasons insisted that it

11

would use the deposition testimony as the trial approached, but ultimately never did so.  After Galaxy read the designated portions of the Tortorelli deposition on May 20 and May 23, 2005, it was entirely reasonable for Galaxy to make the professional judgment that the reading had tested the patience of the jury and that Galaxy should avoid further deposition testimony.  It is ludicrous for the Defendants to suggest that Galaxy itself took the time to designate the voluminous depositions in an effort to cause defense counsel to waste time on counter-designations and objections that it knew or should have known would never result in trial testimony.  In addition, the Court's ruling that all objections would be sustained must have limited the utility of the depositions to Galaxy.  In light of the factors enumerated by Block, there was nothing vexatious about Galaxy's decision to forgo reading the remaining deposition testimony.  The Court will deny Defendants' motion for attorneys' fees and costs regarding the deposition designations.

### IV. Conclusion

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯For the reasons stated above, the Court will deny Defendants' motion and amended motion for attorneys' fees and costs.  An appropriate Order will issue.

August 2, 2005                              /s/
Alexandria, Virginia         James C. Cacheris
                             UNITED STATES DISTRICT COURT JUDGE