IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

GALAXY COMPUTER SERVICES,       )
INC.,                           )
                                )
        Plaintiff,              )
                                )
        v.                      )        1:04cv1036(JCC)
                                )
LARA BAKER, ET AL.,             )
                                )
        Defendants.             )

## M E M O R A N D U M   O P I N I O N

This matter comes before the Court on Plaintiff's Motion for a New Trial; Plaintiff's Motion for Judgment on Count I (turnover under 11 U.S.C. § 542) and Count IV (injunctive relief) of the Amended Complaint; and Defendants' Renewed Directed Verdict Motion on Count VIII (breach of contract). For the following reasons, the Court will partially grant and partially deny Plaintiff's Motion for Judgment on Count I and deny the remaining motions.

## I.  Background

This case involved an action by a Chapter 11 debtor in possession against two of its former officers, a company that purchased a portion of the debtor's assets, and the parent of the company that purchased the assets.[1]

_____

[1] The bank that foreclosed on and sold the assets was also a Defendant but settled with the debtor in possession and was dismissed as a party to this action.

The debtor in possession, Plaintiff Galaxy Computer Services, Inc. ("Galaxy"), is in the business of providing computer security services to various government agencies and commercial customers. Defendants Gary Sullivan and Dr. Lara Baker founded Galaxy. They sold their ownership interest in Galaxy to a company named DOLFIN.COM ("Dolfin") in June 2000 in exchange for Dolfin stock and a promissory note. Sullivan and Baker remained officers and directors of the company after the sale.

Some of Galaxy's government contracts were highly sensitive. The U.S. Government would not permit Galaxy to be merged into Dolfin, which is part-owned by non-U.S. citizens. The Government required that a barrier be established between Dolfin and Galaxy to prevent unauthorized access to classified information and influence over Galaxy's business or management by Dolfin. This barrier took the form of two Proxy Holder Directors with high level security clearances who joined Galaxy's Board.

Sullivan and Baker entered into employment contracts with Dolfin. The agreements contained restrictions on: Sullivan and Baker's post-termination employment with companies engaged in the provision of security services similar to those offered by Galaxy; their promotion to existing Galaxy customers of services similar to or competitive with Galaxy's services; and their inducing customers or employees of Galaxy to alter or terminate

2

their relationship with Galaxy.  All three restrictions applied
if the employee voluntarily resigned unless the employee had been
constructively terminated, in which event only the last of the
three restrictions applied.  The restrictions were limited in
time to twelve months following the termination of employment,
but had no geographical limitation.

After acquiring Galaxy, Dolfin sought out potential
investors and merger partners.  Defendant MCJM, LLC, d/b/a
Pinnacle Financial Strategies ("Pinnacle") expressed an interest
and was permitted to review Galaxy's financial records after
signing a non-disclosure and non-solicitation agreement dated
January 15, 2003.  Dolfin ultimately rejected an offer by
Pinnacle.

Galaxy had three loans with Los Alamos National Bank
totaling approximately $668,000, the largest of which was due to
mature on March 15, 2003.  Baker and Sullivan were personally
liable on the loans as guarantors.  Galaxy had been experiencing
severe cash-flow problems for some time, and often had difficulty
meeting payroll.

Baker and Sullivan were unhappy that Dolfin had
repeatedly failed to deliver on its promised cash infusions to
Galaxy or to pay the purchase-money notes for their stock.  In
early March 2003, they began discussing ways for Pinnacle to
acquire Galaxy.

Soon thereafter, without telling the Proxy Holder Directors or Dolfin, Baker and Sullivan advised the Bank that Galaxy would be unable to pay the largest of the three notes when it matured.  Baker and Sullivan waived any cure periods and consented to the bank's immediate foreclosure on Galaxy's assets.

Shortly before the foreclosure, Pinnacle caused a limited liability company known as Galaxy CSI, LLC ("CSI") to be formed.  CSI is a Defendant in this suit.  On March 25, 2003, Sullivan told the Bank's general counsel that Galaxy's contract receivables were "very perishable" and that an expedited sale to Pinnacle would realize the Bank the greatest return on the collateral.  On March 31, 2003, the Bank accepted Pinnacle's bid of $430,000, executed a Bill of Sale to Pinnacle of Galaxy's accounts receivable and contracts receivable.  None of this was disclosed by Baker and Sullivan either to the Proxy Holder Directors or to Dolfin.

On March 31, 2003, Sullivan called an "all hands" meeting of Galaxy's employees.  A representative of Pinnacle offered Galaxy's employees new employment contracts with CSI. All of the employees resigned that day from Galaxy and accepted employment with CSI, which carried on Galaxy's business at the same location and used Galaxy's phone numbers and Internet web site.

On April 3, 2003, Sullivan advised the Proxy Holders that he and Baker had resigned two days earlier and that Galaxy's assets had been purchased by CSI. A week later, Dr. John Fox, formerly the president of Dolfin, became Galaxy's president. Galaxy filed a voluntary Chapter 11 petition on May 7, 2003.

On May 17, 2005 through May 27, 2005, a jury trial was conducted on the following counts against CSI ("C"), Pinnacle ("P"), Baker ("B"), and Sullivan ("S"):

| Count | Description | C | P | B | S |
|-------|-------------|---|---|---|---|
| II | Avoidance of Fraudulent Transfer (11 U.S.C. § 548) | X | | | |
| III | Accounting | X | X | X | X |
| V | Breach of Fiduciary Duty | | | X | X |
| VI | Aiding and Abetting Breach of Fiduciary Duty | X | X | | |
| VII | Fraudulent Conveyance (Va. Code § 55-80) | X | | | |
| VIII | Breach of Contract | X | X | X | X |
| IX | Civil Conspiracy | X | X | X | X |
| XII | Tortious Interference with Contractual Rights | X | X | X | X |
| XIII | Tortious Interference with at-will contracts | X | X | X | X |
| XIV | Business Conspiracy (Va. Code §§ 18.2-499 & 500) | X | X | X | X |

Counts I (turnover under 11 U.S.C. § 542) and IV (injunctive relief) were reserved to be submitted to the Court

5

after the jury trial concluded.  The jury found in favor of
Defendants on Counts II, III, V-VII, IX, XI, XIII, and XIV.  With
respect to Count VIII, the jury found that Pinnacle, Sullivan,
and Baker had breached their contracts with Galaxy, but found
zero damages.

## II.  Plaintiff's Motion for a New Trial

Galaxy seeks a new trial pursuant to Federal Rule of
Civil Procedure 59(a) on the following grounds:[2]

(1)  because the verdict was against the clear weight of the
     evidence;

(2)  because the verdict was the result of repeated and
     outrageously prejudicial testimony that defendants Baker and
     Sullivan were acting in the interest of the United States'
     national security by insuring that work was done to provide
     communications to "American troops on the ground" on the eve
     of the Iraq War;

(3)  because the Court failed to admit numerous conspiratorial
     and highly important communications from Frank Tortorelli
     and Chris DeSouza, which caused the jury to abandon reason
     and follow their emotions; and

(4)  The denial of damages was a miscarriage of justice.

The Fourth Circuit has held:

a trial judge has a duty to set aside a verdict and
grant a new trial even though it is supported by
substantial evidence, "if he is of the opinion that the
verdict is against the clear weight of the evidence, or
is based upon evidence which is false or will result in
a miscarriage of justice . . . ."

---

[2] The Court will disregard Plaintiff's Reply Memorandum of Law in
Further Support of its Motion for a New Trial Under Fed. R. Civ. P. 59(a),
which was filed almost one month after the deadline imposed by Local Rule
7(F)(1).

*Wyatt v. Interstate & Ocean Transport Co.*, 623 F.2d 888, 891-892 (4th Cir. 1980)(citations omitted).  A new trial can be granted if the admission or rejection of evidence was erroneous.  11 C. Wright, A. Miller, M. Kane, Federal Practice & Procedure: Civil 2d, § 2805, pp. 54-55 (1995).

_____With regard to the admission of the evidence relating to national security, the Court ruled that the intent of the Defendants was relevant to the civil conspiracy and statutory conspiracy counts.  (Mem. Op., May 27, 2005 at 16-18).  The Court stands by its pre-trial ruling and, in any event, does not view the trial testimony on the Defendants' alleged national security motive to have been overly prejudicial.

Galaxy points to ten exhibits that it claims were improperly excluded, Pl. Exs. 30, 32, 33, 36, 49, 49, 71, 151, 185, and 203.  Of these, two were admitted into evidence, albeit only for the purpose of establishing receipt by Baker and Sullivan (Pl. Exs. 30 and 71).  The Court stands by its previous evidentiary rulings.  In any event, given that these exhibits were admitted into evidence and were in fact identified with double asterisks in Galaxy's "Summary of Plaintiff's Exhibits for Special Attention of the Jury," the Court's ruling was not overly prejudicial to Galaxy.

Galaxy failed to move for the admission of five of the other "excluded" exhibits into evidence (Pl. Exs. 32, 33, 49, 185 and 203).

Three exhibits were entirely excluded.  Pl. Ex. 151 was excluded because Plaintiff failed to lay a foundation for its admission.  Pl. Exs. 36 and 43 were not admitted because the evidence at trial showed that at the time he authored the emails, Tortorelli was employed by and acting as an agent of Pinnacle Risk Solutions, a non-party, not by Defendant Pinnacle Financial Strategies.  Galaxy did not allege in its Complaint that Pinnacle Risk Solutions was a co-conspirator.  Accordingly, these exhibits are inadmissible hearsay.

In connection with the bankruptcy court proceedings, Pinnacle filed a privilege log in which it listed several documents along with their corresponding authors.  Pinnacle identified Tortorelli and DeSouza with the initials "PFS" after their names.  Galaxy argues that Pinnacle is thus judicially estopped from contesting the question of Tortorelli and DeSouza's agency with Pinnacle Financial Strategies.

Pinnacle should arguably be estopped from asserting that Tortorelli and DeSouza were acting as agents of Pinnacle when they authored the documents listed in the privilege log.  However, the exhibits that this Court excluded were not listed in the privilege log.  Pinnacle did not make any representation to

8

the bankruptcy court with regard to Tortorelli and DeSouza's relationship with Pinnacle as authors of Pl. Exs. 36 or 43. Accordingly, judicial estoppel does not apply to these exhibits.

Turning to Plaintiff's argument that the denial of damages resulted in a miscarriage of justice, the Court notes that the Defendants' damages expert presented an opinion of Galaxy's value that was in stark contrast to that of the Plaintiff's damages expert. In awarding zero damages, the jury may have: 1) found that Galaxy suffered no damages; 2) found that the pro forma estimates upon which Plaintiff's expert's valuation was based were unwarranted estimates and that the Plaintiff had failed to present any reliable measure of damages; or 3) found it impossible to arrive at a reasonable estimate of Galaxy's damages given the conflicting evidence. A reasonable jury could have reached any of these conclusions. Accordingly, the Court does not consider the jury's verdict to have resulted in a miscarriage of justice.

The Court will deny Plaintiff's Motion because the jury's verdict was not against the clear weight of the evidence and was not based upon evidence which is false.

### III.  Plaintiff's Motion for Judgment on Counts I and IV

A. Turnover[3] (11 U.S.C. § 542)

Galaxy argues that Defendants should be forced to turn over:

(1)  Proceeds from the sale of the Information Diode;

(2)  Proceeds from the National Reconnaissance Office ("NRO") government contract prior to its termination; and

(3)  Proceeds from commercial contracts that were performed (or not performed) prior to their "turnover" back to Galaxy in August 2003.

Section 542(a) of the Bankruptcy Code provides that one with possession or control of estate property "shall deliver to the trustee, and account for, such property or the value of such property. . . ." 11 U.S.C. § 542(a). The burden is on the Plaintiff to demonstrate by clear and convincing evidence that the assets to be turned over were part of the bankruptcy estate. *In re Hines*, 179 B.R. 279, 282 (Bankr. E.D. Okla. 1995). Property is part of the bankruptcy estate if it was rightfully in the debtor's possession as of the date the debtor filed its petition for bankruptcy protection, and includes "proceeds, product, offspring, rents, or profits of or from property of the estate . . . ." 11 U.S.C. § 541(a)(1) and (a)(6).

Citing *Pollard & Bagby, Inc. v. Morton G. Thalhimer, Inc.*, 194 S.E. 701, 703 (Va. 1938) and *Jennings v. Realty*

---

[3] Defendants Baker and Sullivan are not parties to Count I.

*Developers, Inc.*, 171 S.E.2d 829, 833-34 (Va. 1970), Defendants
argue that Galaxy's turnover claim is barred by the doctrine of
election of remedies.  In both of these cases, the plaintiffs
first instituted suits in equity and subsequently brought common
law actions in Virginia state courts.  In *Jennings*, the Supreme
Court of Virginia stated:

> Consistent with *Pollard & Bagby v. Thalhimer* [] we hold
> that the mere institution of a suit in chancery does
> not necessarily of itself constitute an election of
> remedies and preclude the bringing of an action at law;
> that where two proceedings are instituted on the same
> state of facts, the defendant can compel the plaintiff
> to make an election; and that there can be only one
> recovery where the cause of action involves the same
> parties and touches the same subject matter.

Jennings, 171 S.E.2d at 834.  Here, however, the Defendants did
not request that Galaxy make an election of its remedies and
there was no recovery by Galaxy as a result of the jury trial.
Accordingly, *Jennings* and *Pollard* do not preclude a judgment for
Galaxy.

    i.  The Information Diode

       At his deposition, Tortorelli testified that after
March 31, 2003, CSI sold four "Information Diodes" to Orbital
Sciences Corporation for approximately $150,000.  (Tortorelli
Dep. at p. 169 - 172).  The "Information Diode" is an information
flow device used for secure communications between networks, for
which Galaxy owns the patent.  (See Pl.'s Ex. 21).  In its due
diligence report, Pinnacle recognized the Information Diode as

11

one of Galaxy's assets.  (Pl.'s Ex. 29).  This asset was not sold
to the Defendants by Los Alamos National Bank when it foreclosed
on Galaxy.

Defendants argue that Tortorelli's testimony was
insufficiently precise and reliable to meet the clear and
convincing standard.  The relevant testimony reads:

Q:   After March 31, 2003, were there any sales of the
     information diode?

A:   Yes, there were.

Q:   To whom?

A:   A company, I don't know the name of the company.

Q:   Was it Orbital Sciences Corporation?

A:   Yes, that would be it, very good.

Q:   And do you know how many information diodes were sold?

A:   I belief four.

. . .

Q:   And would CSI have in its possession an invoice or something
     that would show the date of sale?

A:   Yes.

Q:   And that's something you have under your ability to obtain?

A:   Yes.

Q:   And did CSI receive payment for the purchase of the
     information diodes?

A:   Yes.

Q:   And that was approximately $150,000.00?

A:   Approximately that, yeah.

Q:   And when did CSI receive payment for the sale of the information diodes?

A:   I'm going to say probably in the late June time frame.

(Tortorelli Dep., at pp. 169-72).

Defendants failed to put forth any counter-evidence relating to the information diodes.  Tortorelli was the CEO of CSI.  Given Tortorelli's testimony that an invoice or record of the sale of the information diodes was within his ability to obtain, Defendants' decision not to come forward with this evidence to dispute the amount of the sale is an indication that CSI sold the information diodes for no less than $150,000.  The Court finds by clear and convincing evidence that CSI sold information diodes, property of the bankruptcy estate, for $150,000.  Accordingly, the Court will order the turnover of the proceeds of the sale pursuant to 11 U.S.C. § 542.

ii.  Galaxy's Contracts

Galaxy argues that it is entitled to any proceeds and profits from its government and commercial contracts that were received by CSI and Pinnacle because these contracts were part of the bankruptcy estate.  CSI was entitled to retain payments due or becoming due as a result of Galaxy's performance of the contracts.  (See Order of Bankruptcy Judge Stephen S. Mitchell, August 2, 2004, ¶2a).  However, the Bill of Sale executed by Los Alamos National Bank to CSI on March 31, 2003 conveyed to CSI

13

Galaxy's accounts and contract receivables, not the contracts themselves.

Galaxy did not file a reply brief in connection with its motion for judgement on Counts I and IV.  Nor did Galaxy cite any law in the portion of its brief in support where it requests turnover of the contract proceeds.  More importantly, Galaxy has not presented any evidence of the amounts received by CSI for its work on any of the contracts at issue, let alone sufficient evidence to meet the clear and convincing standard required by 11 U.S.C. § 542.  Accordingly, the Court will enter judgment in favor of Defendants on Count IV.

## B. Injunction

In Count IV, Galaxy seeks to enjoin the Defendants from a range of business activities based on Defendants Sullivan and Baker's June 1, 2002 Employment Agreements.  In particular, Galaxy seeks to enjoin:

(1)   Defendants Sullivan and Baker from working on any matters that involve information security or any other business previously performed by the Debtor.  Galaxy does not seek to enjoin Defendant Baker from consulting with the United States government agencies at their request;

(2)   Defendants Pinnacle, CSI, or their employees or officers or directors from using Galaxy's former employees to perform an work the in the information security arena;

(3)   Pinnacle, CSI, or their employees or officers or directors from performing any services for any of Galaxy's actual or potential customers; and

(4)   Defendants Pinnacle and its employees or consultants, CSI and its employees, Sullivan, and Baker from utilizing any

14

confidential information of Galaxy in any way including the performance of any contracts and contact with government officials related to the contracts.

Galaxy bases its argument on Section 12 of Defendants Sullivan and Baker's June 1, 2002 Employment Agreement, which states:

> Employee acknowledges that the services rendered by him are of a special, unique, unusual, extraordinary, and intellectual character, which gives him a peculiar value, and the loss of which cannot be reasonably or adequately compensated in damages in an action at law and that a breach by him of any of the provision contained in this Agreement will cause Galaxy irreparable injury and damage.  The Employee further acknowledges that he possesses unique skills, knowledge, and ability and that competition by him in violation of this Agreement or any other breach of this Agreement would be extremely detrimental to Galaxy.  By reason thereof, the Employee agrees that Galaxy shall be entitled, in addition to any other remedies it may have under this Agreement or otherwise, to injunctive and other equitable relief to prevent or curtail any breach of this Agreement by him.

Galaxy argues that it will suffer irreparable harm if it does not have the opportunity to recover its contract with the National Reconnaissance Office that it possessed prior to the events that gave rise to this suit.  Galaxy further argues that so long as CSI continues to employ Galaxy's employees, and so long as it can use those employees to perform the work that had been performed under Galaxy's NRO contract, Galaxy will have no chance of recovering that work and restoring the relationship that existed.

In determining whether a preliminary injunction is appropriate, a district court must apply the "balance-of-hardship" test. *See Blackwelder Furniture Co. v. Seilig Mfg. Co., Inc.*, 550 F.2d 189, 194 (4th Cir. 1977). Under this test, a court should examine the following four factors: (1) the likelihood of irreparable harm to the plaintiff without the injunction; (2) the likelihood of harm to the defendant with an injunction; (3) the plaintiff's likelihood of success on the merits; and (4) the public interest. *See Hughes Network Systems, Inc. v. InterDigital Comm'n Corp.*, 17 F.3d 691, 693 (4th Cir. 1994); *Blackwelder Furniture*, 550 F.2d at 193-96. No single factor can defeat a motion for a preliminary injunction. Rather, "[t]he decision to grant or deny a preliminary injunction depends upon a 'flexible interplay' among all the factors considered." *Blackwelder Furniture*, 550 F.2d at 196.

When applying the four-factor test, the Court must first balance "the likelihood of irreparable harm to the plaintiff if denied and of harm to the defendant if granted." *See Manning v. Hunt*, 119 F.3d 254, 263 (4th Cir. 1997). The plaintiff must demonstrate that the harm is "neither remote nor speculative, but actual and imminent." *Id.* (quoting *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir. 1991)).

The standard for the issuance of a permanent injunction is essentially the same as for a preliminary injunction with the

exception that the plaintiff must establish success on the merits and that the focus on irreparable harm includes the question whether the plaintiff has an adequate remedy at law.  *Nat'l City Bank v. Turnbaugh*, 367 F. Supp. 2d 805, 821 (D. Md. 2005)(citing *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987); *Wilson v. Office of Civilian Health & Medical Programs of the Uniformed Servs. (CHAMPUS)*, 65 F.3d 361, 364 (4th Cir. 1995); *Broussard v. Meineke Discount Muffler Shops, Inc.*, 958 F. Supp. 1087, 1108 (W.D.N.C. 1997), overruled on other grounds, 155 F.3d 331 (4th Cir. 1998)).

The Court finds that Galaxy failed to prove that it suffered damages as a result of the Defendants' conduct.  Galaxy has not established success on the merits.  Accordingly, the Court will deny Galaxy's request for an injunction.

## IV.  Defendants Renewed Directed Verdict Motion on Count VIII (Breach of Contract)

On May 25, 2005, at the close of Galaxy's case, the Court took under advisement the Defendants' Motion for a Directed Verdict on Count VIII (breach of contract) against all Defendants.  Count VII involved allegations of breach of a reciprocal Non-Disclosure Agreement between Galaxy and Defendants Pinnacle and CSI as well as allegations of breach of the employment agreements of defendants Sullivan and Baker.  The Jury found in favor of all Defendants on all counts except Count VIII

17

under which it found for Galaxy against Defendants Pinnacle, Sullivan, and Baker, but awarded zero damages.  Defendants now renew their directed verdict motion on the breach of contract count.

The Court finds that Plaintiffs presented sufficient evidence from which a reasonable jury could conclude that Pinnacle utilized confidential information regarding Galaxy's personnel and benefits records for preparing CSI employment offers to Galaxy's employees.  The workforce and clientele that had been Galaxy's on March 31, 2003, became CSI's workforce and clientele on April 1, 2003.  A reasonable jury could determine that this was made possible by the confidential information given to Pinnacle and subject to the Non-Disclosure Agreement.

Defendants Baker and Sullivan argue that the restrictive covenants in their employment contracts are unenforceable and were not triggered in any case.  As the Court ruled in it's May 27, 2005 Memorandum Opinion, the Defendants are bound by the previous decision of Judge Mitchell on the issue of the enforceability of the employment agreements, which they did not appeal.  Moreover, a reasonable jury could conclude that even before they resigned or were constructively terminated, Baker and Sullivan began to solicit Galaxy's employees, in violation of their employment agreements.

Accordingly, Defendant's renewed motion for a directed verdict on Count VIII (breach of contract) will be denied.

### V.   Conclusion

For the foregoing reasons, the Court will partially grant and partially deny Plaintiff's Motion for Judgment on Count I and deny the remaining motions.  An appropriate Order will issue.

September 2, 2005                    _____/s/_____
Alexandria, Virginia                James C. Cacheris
                                    UNITED STATES DISTRICT COURT JUDGE